Hearing, hearing, hearing. The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States and this honorable court. Thank you. Good morning. Good morning. We have one case on our docket this morning. It is 25-40802. It's Apple Inc. v. Key Patent Innovations Limited. I don't want to mispronounce your name. Is it Palmore, Palmore? I'm not sure. It's Palmore. Thank you, Your Honor. Okay. Thank you. We're ready for your argument. Thank you, Your Honor. May it please the court. I'm Joseph Palmore here on behalf of Apple. Apple would be gravely harmed if its highly confidential licensing agreements are exported for use in litigation in India and Germany and handed over to in-house personnel of its direct competitor. The district court nonetheless ordered production of those contracts without the reasonable restrictions Apple sought. That decision suffered from two flaws. First, the production was ordered without any Article III judge ever making a de novo decision that it was appropriate. That was wrong under this court's precedent, the applicable statute and civil rule, and the Constitution, all of which require the magistrate's order to be treated as dispositive. Second, regardless of how the order is reviewed, it should not stand. Apple made a strong showing of harm if these agreements are given to employees of its competitor who are, one, outside the United States, and, two, whose jobs create a grave risk of inadvertent disclosure. Under any standard of review, that harm outweighs the largely speculative burden Maliki claims if reasonable outside counsel-only restrictions were imposed. Turning to the first question, the standard of review question, we think that this court's decisions in BDO and Davidson control the question. We recognize that discovery orders, of course, are typically non-dispositive. That is because they typically arise adjacent to or ancillary to a merits dispute. But here, like in BDO, the discovery dispute is the merits dispute. This is a freestanding cause of action for discovery. Is the Ninth Circuit the only circuit to rule on the issue? Yes, Your Honor. The Ninth Circuit is the only one to address the issue, and in CPC, the Ninth Circuit, as the court knows, held that Section 1782 orders are dispositive. What about Jordan in the Eleventh Circuit? How would you distinguish that? Sure. Jordan is distinguishable because there was a merits dispute pending in federal court. So the merits dispute was not about the subpoena enforcement. The merits dispute was about the constitutionality of the death penalty protocol in Mississippi. It just so happened that the subpoena enforcement action had to be filed in Georgia because that's where the target was. That happenstance didn't make it any less ancillary, didn't change the fact that the main event was about the constitutional question. Here, the main event is about discovery. Maliki sought these documents, these Apple-BlackBerry agreements, and this magistrate judge's order was the definitive word on whether they would be disclosed and under what terms. But you're not challenging the main event. I mean, the 1782 ruling is not really at issue here. It's really just Apple's motion for a supplemental protective order, which surely sounds interlocutory or ancillary to me. In this unique context, I respectfully disagree, Judge Wilson, because it's important to recognize that here the 1782 application was filed ex parte. That is typical. And it was granted ex parte. The actual litigation in 1782 actions comes later. Apple was not even a party to the 1782 action. The subpoena was not directed to Apple. It was directed to BlackBerry. So the way that Apple could come in and protect its interest and get an adjudication on whether these documents would be handed over and under what terms was by filing for a protective order. It filed under Rule 26C1G, and it asked for relief in the alternative. The principal relief it sought was that the documents not be provided at all. In the alternative, it argued that if they are provided, they should be provided only with outside counsel-only restrictions. So it was adjudication of this protective order that was the only time that in an adversarial context, the lower court decided this question, decided the ultimate question, the ultimate claim for relief, the ultimate defense of Apple. And these documents now, according to this magistrate order, will go over without the reasonable restrictions Apple sought. So that we believe under BDO, which there was a protective order issue in BDO as well. The underlying order was about denying a motion, sorry, granting a motion to quash and also granting a protective order. This court didn't distinguish between the two. It just said that that order that decided both of those questions was dispositive. So to hear that this was the final disposition or in the words of this court in Davidson, it was dispositive insofar as federal court proceedings were concerned with respect to these documents. The other thing, I guess, is I appreciate the explanation of what Apple's challenging on appeal, but does it matter? And I guess we'll see what counsel opposite argues. But as I read the briefing in the record, they're basically saying this is a matter of law anyway. The interpretation of this licensing agreement, the exception to the confidentiality provisions would be de novo review either way. If the district court applies an abuse of discretion standard effectively, but the magistrate judge misapplied the law, whether applicable law required the production of these agreements. I mean, that would be an abuse of discretion, right? If it's de novo review, it's going to be the exact same question. You want us to remand the case and send it back to the district court for a redo on a de novo standard. But does it matter? Well, Your Honor, that often this court does when it concludes that the district judge applied the wrong standard of review, it often does remand. We think the court could go ahead and decide the question because we do think that there was embedded in the magistrate judge's order, a legal error, an error of interpretation of the contract. But taking a step back, this is not a contract dispute. The contract is evidence of harm. It shows that Apple's argument that these documents are incredibly sensitive and are kept confidential, even within the company, is not some kind of post hoc explanation. These provisions were written right into the contract. So the contract is evidence of harm, but it's only part of the analysis. So we think that if the district, if the magistrate erred in constraining the contract, which we think it did, even separate from that, Apple made a showing of harm. That's the Rockour Declaration. And under Rule 26, there is a balancing of the harm to the party if the documents are disclosed without restrictions and if there is undue burden on the other party if the restrictions are not applied. And here, the harm to Apple is, we think, manifest. These are not just any licensing agreements. These are for standard essential patents. This court in HTC talked about how important those are. And as I mentioned before, Apple keeps the terms of these particular license agreements incredibly confidential. They're not even widely known within the company. But so I'll credit you that it's very important to Apple. It's a very important dispute. This is sensitive information. I think probably when you have confidential information, it would always be important to the parties to protect it. But if the magistrate judge got it right, that the production of these agreements is required by applicable law, German and Indian law. In other words, we're really talking about the in-house councils and the right to access these. But if applicable law says it's got to be produced, whether it's interpreting the contract or applying that law, I mean, you lose, don't you? No, Your Honor. We would be making the same argument here if there were no confidentiality provisions in the contracts. That's point one. Well, but you've got the confidentiality provisions that govern. I mean, you spend a lot of time talking about what Apple and BlackBerry negotiated, and it was a hard-fought negotiation, all those kinds of things. But it strikes me that, I mean, what's left to balance if the contract itself says, well, the confidentiality provisions don't apply if applicable law says otherwise? Well, I think you would still balance the harm against the undue burden. But I'd like to go right to the contract, Judge Wilson, since you're raising it. The magistrate got that wrong, right? There's a sentence, there's a provision. These are a series of exceptions to the confidentiality obligation. So there's an applicable law exception. That would, in context, clearly means like a statute or something. And the reason we know that and that it doesn't apply in normal litigation is that there's a separate exception that governs in civil litigation, and it requires a protective order. And the protective order limits disclosure to outside counsel only. If the applicable law exception applied in a discovery context, it would completely erase that litigation-specific exception and its specific requirements. And here, of course, BlackBerry recognized that it had to get a protective order. If you look at Document 1-7, which is the BlackBerry email exchange with Maliki that preceded the 1782 application, what BlackBerry said there was, we could give these to you if there's a suitable protective order. Well, but you're sort of mixing apples and oranges, I think. So there's litigation going on, and they have to get an order basically compelling production of these agreements or reaching them since it's foreign litigation, right? So 1782 is there. But that's whether the agreement should be disclosed at all. What we're really talking about, I think what you're really talking about is whether in-house counsel for Xiaomi, if I'm saying that correctly, get to access this versus the outside counsel restriction that Apple would like. But that's a matter of applicable law in Germany and India, correct? No. Well, yes and no, Your Honor. That is waivable. There are a couple things I'd like to say about it. Well, it's waivable, but they haven't waived it. Well, I think I would commend to you this part is under seal, so I want to be careful. But if you look at tab two of the additional record excerpts, you're going to see the basis that Maliki cites for why Xiaomi won't waive. It's pretty perfunctory. It's entirely perfunctory. In civil litigation, parties go back and forth. They negotiate things. This was a one and done exchange. The court can read it for itself. And what Maliki is saying is, well, they won't agree. We're done here. No evidence of that. They press them on it. No evidence of negotiation. Nothing. That's inadequate because it's uncontested that these requirements that the records go to in-house counsel can be waived. Even separate and apart from that, Maliki hasn't even said that it's going to use these documents. We don't know that they're even going to be useful to it in making its friends showing. And it also has a whole bunch of others. It said that it got all the others, and it hasn't made any kind of Apple-specific showing about why it needs these agreements on top of all the others that it has. So if you weigh the very direct risk to Apple, where these agreements are going to go overseas, they're going to go to in-house counsel at a direct competitor, Apple's going to have no visibility into what happens with these agreements inside that company in China. No ability to enforce its rights or the limits that are in the protective order. And moreover, these in-house folks at Xiaomai are involved in managing this litigation in Germany and India. That is in the supplemental protective order that the magistrate entered. And this litigation in Germany and India is all about patent licensing. More specifically, it's all about the price of patent licensing or the fees that will be paid to license these patents. So it stretches credulity to think that these in-house attorneys are going to be able to separate or compartmentalize in their mind this information, this incredibly sensitive information from their direct competitor, Apple, about how much Apple paid to license these standard essential patents from their management of litigation, which is about how much Xiaomai has to pay. How much Xiaomai should pay to license these same patents. Counsel, does it matter if we consider this functionally as a motion to quash as opposed to a motion for protective order? You see any difference there? Is there anything that we should be aware of either way? I don't, Your Honor. I mean, this court takes a functional approach to these questions. That's the Davidson case. And as a functional matter, this motion to quash I mean, sorry, this motion for a protective order, which sought in the alternative a bar altogether on disclosure of these documents, or if they do go over having restrictions, the same thing could have been asked and it could have been labeled a motion to quash. It makes no difference. I think it's a substance over form inquiry in this court. And in substance, the final decision was these documents are going to go over and and without the restrictions Apple sought or in the words of Rule 72, Maliki's claim to the documents without these restrictions was definitively granted, was resolved in Maliki's favor and Apple's defense that the documents should not go over without these restrictions was definitively rejected. So we think that that is what makes it dispositive. And to the extent the court has any doubt, Davidson says that the rule of constitutional avoidance applies here and that the scope of a magistrate's authority should be construed narrowly because it's it's only the oversight of an Article 3 court that makes the magistrate system constitutional. So we think that that that was an error. There was an error of standard of review. This court could go ahead and decide for itself. We think we could remand or it could decide for itself that these documents should not go over that Apple's harm showing outweighed the largely speculative harm that Maliki proffered if these reasonable restrictions were imposed. And this court could could reverse on either basis. And I see my time is up and I'd like to reserve the rest for rebuttal. Thank you, counsel. Mr. Johnson. Thank you, Your Honor. And may it please the court. I'm eager to address your questions on Apple's positions concerning the standard of review, which would take this court far beyond any prior decision, including Davidson and BDO. But I'd like to begin by noting that listening to my friend, Mr. Palmore, you'd think the court below had ordered Apple to give away the keys to its technological kingdom. But this is not the formula for Coke or some sensitive algorithm on an AI platform. We're talking about standard essential patents and licenses on them, which the law routinely requires disclosing under suitable protective orders. Apple's sophisticated. It knew when it negotiated these license that Fran law applies and that the primary source of evidence to show you satisfy Fran laws is licenses on the same patent portfolio. That's undisputed. The license here expressly acknowledged that may provide exceptions to confidentiality. The court below strictly limited disclosure to just two in-house lawyers not involved in competitive decision making, including licenses. That's exactly what's needed to satisfy foreign law while protecting the financial terms as carefully as you can. Well, what Apple what Apple negotiated for in the course of litigation was that only outside counsel would have access to these licensing agreements. In other words, that's expressly contemplated in the agreement. And what what you're really traveling under is more of a generalized, well, applicable law requires, you know, this or what have you. So how is Apple getting the benefit of what what they bargained for when it specifically says that only outside counsel in litigation get access to this under the key provision? Section 9.1, the confidentiality paragraph. You'll see that there's different Roman numbers that provide for different disclosures, exceptions to confidentiality. Exception number two, Roman at two, is about compulsory disclosure. And it says, as may be required by applicable law, as Mr. Palmore said, you know, that's probably a statute or regulation or order of a governmental authority or competent jurisdiction, which the parties agree can be a court. So that's about compulsory disclosure. Then the next one, Roman at three, is about during the course of litigation. Now, you'll notice there's nothing in there about being required to do anything. That's talking about ordinary voluntary disclosure in the give and take of discovery. And that's where the outside counsel, outside counsel eyes only provision lies. And if you read it more broadly, it would essentially mean that Apple is a law unto itself and has the right to say, well, we just we just don't ever want anybody else to see it. You know, the requirements of the law notwithstanding. But the parties recognize that whether it's by statute or by court order, there's an established body of law governing these sorts of things. And it's, you know, exactly as the court below and the magistrate below did it. So are you traveling under the magistrate judge's order to say, well, there's a court order, therefore it's compulsory? I think that that's a valid reading in this provision, your honor. Well, it's very circular, though, because you go in with Blackberry, as I understand it, it's X party. The 1782 actions commenced and everybody's in agreement. Nothing's litigated at all until Apple intervenes effectively. What, a month later or a few weeks later? So, I mean, nothing is contested whatsoever in the order. The order is basically an agreed order. So, so, so compulsory. First of all, I'm happy to talk about the positive law aspect of this and about foreign law. Second of all, I think that the way to conceptualize this is that the parties recognize courts, statutes, regulations can order disclosure. They're not going to list all of the terms of those laws in this provision. They're simply acknowledging where it's compelled. There's a whole body of law out there that governs this. Here, cases like U.S. Steel govern that. And it's not some willy nilly thing. It's not circular. There has to be an application by the court. But I do think that's valid. They acknowledge a foreign court can do this, but there's no limitation to foreign courts in this provision. The foreign court hasn't done it, just to be clear. That's correct. But the third thing I wanted to say, your honor, is you referred to them intervening. And I want to focus on that because this is an independent problem they have. We think you look at the standard of review issue in sort of two ways. You ask, and we don't agree that there's some functional analysis necessary. You ask, is this situation, is this motion analogous or comparable to the types of things that you see in the Federal Magistrates Act? And so in Davidson, you had a motion to remand, basically a subject matter jurisdiction type ruling. It is disposed of everything. And you said that's functionally close enough. We don't have any quarrel with that, but you asked that. And that's motions that are highly significant in the ultimate procedural or substantive direction of the case. But second, and this is right in the text of Rule 72a, it has to resolve the claim for defense of a party. Apple is not a party. It did not intervene. It did not seek to deal with the entire proceeding below. It's raising one side issue, sort of an ancillary discovery issue in a dispute that's already just about discovery, which is. But that's the problem, counsel. It's not a dispute. You're not disputing anything until Apple comes in and contest the only issue that's contested. It's effectively a motion to quash. I guess they do. They do seek to have the discovery altogether prevented. And then they also seek these alternate things. You did what parties are supposed to do. I think you tried to work it out and you went back and forth and you whittled it down to this inside council issue. Basically, as I as I understand it, that's the real live issue in the case. But that's the only thing that's litigated. So beforehand, there was no other dispute between Blackberry or Maliki or Malik. How do you say it? Maliki. Sorry. I was trying to be my best Irish this week getting ready since it was St. Maliki. But anyway, Apple's the only party contesting anything. I shouldn't use the word party. They're the only entity contesting anything. And so they sound like a party. The two parties to this case, your honor. Well, there's two on our side. But the parties to this case are Maliki and Blackberry. One thing that's really clear. Apple is not one. In every case they cite to you, they all involve situations where there's a resolution of a party's claim of defense. CPC. How does the court put it? We think that's not quite relevant. But a decision that effectively denies that ultimately released on by a party. Davidson. You had a party. You had the plaintiff moving to remand for state court. Obviously, the defendants opposed BDO, the EEOC, a party moving to enforce an administrative subpoena against BDO, a party. They cite Frazier versus NLRB from the Third Circuit. Same thing. They're both parties to our knowledge. That is true of every single administrative subpoena case. They cite and they're in their section 1782 cases. And incidentally, to return to, I believe it was Judge Engelhardt's question. There are other circuit decisions on this issue that go the opposite way of the Ninth Circuit on this on the CPC issue. They're not cited in the briefs. We don't think they're particularly relevant. And the reason we don't think they're relevant is that Apple is raising a sliver, a fraction of the section 1782 issue. There are there are lots of licenses here, not a ton, but there are several. The number actually isn't in the record. Apple's is, of course, one of them. But the only thing that they can complain about is the Apple BlackBerry license issue. And that's true for several reasons. They forfeited it below. They've got an estoppel problem because they agreed, as a condition of our agreeing to a joint motion for a stay of the district court's order, that they would expedite this appeal and limit their arguments. And then they've got an Article 3 reason why you're limited to that, because none of those other licenses affect them. So that's why the only thing before you is a fraction of what was before the district court. And that's why all these cases that they cite and that they say, oh, well, this is dispositive. Know what they're doing. It's like a sleight of hand. They cite cases that say something is dispositive if it disposes of the entire federal court proceedings. But then they in their brief look at this carefully. They say relevant federal court proceedings, and then they define that as as to Apple. So they're taking the cases that are cited in their briefs, the cases that they rely on for the dispositive issue, taking them way beyond where they've gone. And then to boot, they have an independent problem that they're not a party, which is also a factor that distinguishes every one of those cases. So I think that this, you know, Jordan is a much better case to look at in this circumstance. There, the court acknowledged that what's dispositive for purposes of jurisdiction won't always be dispositive for purposes of Rule 72. And and the language of the case, it's obviously quoted in our brief. But I'll just I'll just read you the most relevant passage. Even though the magistrate judges ruling on the motion resulted in a final disposition of the issues raised in the motion, permitting plaintiffs to appeal a routine pretrial discovery motion. There was no reason to treat the magistrate judge's ruling on the GDC's motion to cause any differently in the court. We treat a similar pretrial discovery motion had been filed in the district where the underlying action was pending. Now, Apple is saying counsel counsel isn't the accomplishment of this discovery. The ultimate relief sought in this Texas federal court in this litigation. It isn't that the sole and only purpose of the Texas litigation is the accomplishment of this discovery for a dispute overseas. Is that a fair statement? It depends on what you mean by this discovery. The only thing on appeal is not a full body of discovery that was sought in the district court. So the appeals counsel, we have appeals come up all the time that are just a sliver of the case that occurred in the district court. There's nothing else coming on appeal because Blackberry and Maliki agreed to the relief. In other words, nobody's going to appeal anything but Apple. So, again, back to Judge Inglehart's question, how is this not a dispositive ruling that wound up the case? There were things that had to be worked out between us and Blackberry on it. But so on the question of appellate jurisdiction, not something that's in the briefs because the parties agree there's appellate jurisdiction. But this is why we believe there's appellate jurisdiction. And it's a very different test from what's dispositive for purposes of Rule 72. You have a decision, several decisions like this. Lewis versus Crochet is one. It's 105, F4, 272, and 281. It says a non-party can appeal if they actively participated below the equities favor hearing appeal and have a direct personal stake in the outcome. We don't dispute that Apple has that. And we're not saying that they can't be heard on their motion. But what they're saying is this is a matter of constitutional proportions. We have a right to de novo review. And they're doing that on a very narrow discovery issue where they didn't even intervene as a party. They're telling you the Constitution requires interpreting these rules and statutes in a way to give them Article III review of this narrow discovery issue when they didn't even assert a claim. They could have asserted a breach of contract claim against Blackberry. Their brief says that Blackberry has acted in a manner inconsistent with the licensing agreement. Their brief accuses the district court of vitiating that agreement. I still think you have to engage in analysis of is this sort of motion look like what the Federal Magistrates Act is talking about? I think you still have to ask them. And I think they lose for that reason. But even if you disagree with me about that, they have an independent problem. They are not a party. And they didn't assert a claim. It's that simple. And it's not just because they're asserting the constitutional right. Well, and I appreciate the argument and the clarification to try to get our arms around it. But I guess the ultimate question still in my mind is, does it matter? In other words, does our appeal devolve down to the interpretation of the license agreement itself about what is applicable law or what is a court order? In other words, whether it's DeNovo review by the district court or this broader, effectively abusive discretion by the district court. And I think you make this argument. So I don't know if this is a friendly question or an unfriendly question, whichever. But I'm just trying to get to the nub of the question. I welcome that question. Your honor. Don't we? Aren't we going to do the same thing? And if we send it back to the district court, won't the district court do the exact same thing, which is construe the agreement like the magistrate judge did? Probably. And I would begin by noting that Mr. Palmore said twice that they have no issue if this court reaches the merits. And here's and we agree that you should do that. And we agree that it doesn't really matter what the standard of review is in terms of whether we win. And you focused on this. So what did the magistrate say? The magistrate focused on the Romanette to provision in Section 9.1. And it said, I read this contract to say that that there is that the former requires disclosing this now. Now, Apple responds and they say, well, you know, they're not they're not really required. You know, there's lots of other licenses out there to which I would say, well, if that's the standard, no license will ever be produced because every party will always say there's a body of licenses. But here's I think that's kind of a key argument. But here's what's not disputed. First of all, Maliki is subject to friend obligations under foreign law. Foreign law requires some in-house access. The primary source for assessing whether you satisfy your friend obligations is concluded licenses on the same patents. That comes from the whaler affidavit. Paragraph nine is not disputed. Apple's license are in the words of this report highly relevant because Xiaomi is a close competitor. These are the two or three largest companies in the world on this. And Xiaomi has stated on the record, it's believed that it's strictly necessary to have the full portfolio and then an outside counsel restriction which severely limits defense. That's docket 75 in this exhibit. It's the Richter email. Now, Mr. Palmore has referred to that as perfunctory. I don't think it's perfunctory at all. What is stated there, and this comes from Clifford Chance, Xiaomi's outside counsel, is very clear. It is Xiaomi's position that a production of those agreements is strictly necessary to assess the friendliness of Maliki's offer for their portfolio and the BlackBerry portfolio. It goes on to say, any further restrictions will be at Xiaomi's disadvantage and will severely limit the defense. A production of the agreement on outside counsel only basis would not only make coordination with the clients impossible but would also prevent Xiaomi from assessing Maliki's offer on a profound basis. This does not sound like equivocating, Your Honor. And, you know, so I don't think it's perfunctory and I don't think it's unclear. Well, if it's vital to the litigation and Xiaomi says that, why can't they live with just outside counsels accessing it? In other words, if that's consistent with what the licensing agreement itself requires in the litigation exception, you know, if they've got to have it, why can't they have it as curtail? It's only slightly curtailed. Well, Your Honor, I would note that the provision of the contract that talks about, you know, limiting economic terms says to the extent legally permissible. And under German and Indian law, this can't be used unless somebody in-house and, you know, obviously the magistrate, the district court were very careful about limiting that. But somebody has to see the terms. And again, it's a grand case. So, you know, the whole thing is the terms. Counsel, counsel opposite. I want to ask this question if I could before it slips my mind again. Counsel opposite said even even with the legal issue that the interpretation of the contract, there's still a rule 26 balancing that's got to be required. Even if we say, you know, we were to say or the district court said applicable law covers this situation, sort of akin to what the magistrate judge ruled. There's still a balancing that has to be required in the district court ought to do that to no vote. Could you address that? A great question, Your Honor. So the balancing here, I would say the record is undisputed and based. Almost everything is legal. The excuse me, Apple has not disputed the ruling below that these are highly relevant licenses. Now that they say, you know, what's not required and so forth. But there's no dispute over the relevance. They haven't said anything about that in their brief. So that was kind of the only factual thing that the magistrate referred to. It's their burden to show the harm to them. It's interesting to hear how Mr. Palmer talks about that and how Apple's briefs talk about that. It's all about what is inherently risky. And that just doesn't cut it as a matter of law. U.S. Steel is the leading case. We talk about it at some length in our brief. But many, many, many courts have followed U.S. Steel. The Ninth Circuit, of course, acknowledges the leading case in this area. And it says, you know, you have to look at what they do. You can't rely just on their position. And there is no evidence. And Apple has had the names for some time. There's no evidence that these two named in-house people are in any way untrustworthy. Their argument is essentially based on the country that the competitor is from. That's what Apple is relying on. And I would note that, you know, one of the two names in the Enri Chowney case that we cite in our brief, the Eastern District of Texas addressed this and said, you know, this was not a basis for resisting. So I think if you look at it as a balancing, you're looking at two things. What is the harm to us? That's a question of law under foreign law. I've explained why I think it's a problem. Maliki will submit these patents, excuse me, these licenses to the court regardless of their terms. Maliki has submitted everyone so far. We are committed to doing that. And, you know, obviously we don't say our case rises or falls with any one. But it's very clear that this is the core of how you establish your friend obligations. And Chowney is taking the position that everything needs to be there. So that's that side of it. I think it's basically a legal question of how you look at foreign law. Enri Chowney speaks to that as well. On their side, where they have the burden to show the harm, they're just relying on, like, you can't trust these people. I have two questions, two quick questions. One, I want to make sure that I heard you correctly. You want us to reach the merits, is that correct? We think you should reach the merits. My second question is, does the case law that applies when someone is seeking documents or records from a third party and they're claiming attorney-client privilege, are those cases analogous at all to what's in front of us? So there are lots of different types of analogies you could make, motion to seal type cases, these administrative subpoena type cases. The parties haven't really talked about privilege so much in the briefs. I think the others may be somewhat closer. But what's uniform about these cases is that the courts have only treated them as dispositive, where they resolve all federal issues and where there's a party there. And I would also note, just as a matter of practice, you look at, like, the motion to seal cases, the folks who are complaining uniformly intervene to assert their rights. I mean, you know, Apple talks a lot about BDO. I think that case would be analogous. The EEOC comes to court and says, we've got a subpoena to enforce. And BDO says, no, we're asserting privilege. That was a case involving privilege. Maybe an employee comes in and says, well, I have no problem with my employment files being turned over in general, but I don't want my medical information turned over. But I'm not a party. I'm just telling you. I'm filing a motion. Don't dispose the medical information. That would at least make the case factually analogous to this one. What they're asking you to do goes way beyond any prior law. We urge the court to resist that temptation. Thank you, counsel. May I proceed, Judge Richmond? Yes. Thank you. I'd like to make a couple of points on each of the two issues. First, on the standard review question. Mr. Johnson posited that I guess if we were a party in his view, then this perhaps would have been a dispositive motion. But then I think I also heard him to say that only Maliki and BlackBerry were parties here. I think that would be a perverse result. Apple got involved in this case in the only way that it reasonably could. It objected to the handover of documents that were its documents, the only documents it had standing to object. It didn't need to come in and intervene and ask for the entire 1782 order to be overturned. It has no dog in the fight with respect to other agreements. As a third party, it came in, it sought a protective order, and that's what third parties do in this situation. And then it became, as Judge Wilson said, the only issue that was disputed, the only issue that was litigated. And it resulted in a final and dispositive order on whether these documents are going to be handed over and what restrictions would be associated with them. He says we have no claim. We have a defense. Our defense is these documents should not go over without protections. And that defense was definitively rejected, and that made this order dispositive. On the merits, a couple points. On the kind of court order question, what I think I hear Mr. Johnson saying is that BlackBerry could simply acquiesce in a court order, even though it had agreed to a provision saying in civil litigation, a protective order with outside counsel, only restrictions are required. But if it just acquiesced in advance to an order, then all bets are off and it gets out from under those requirements, because that's basically what happened here. Maliki contacted BlackBerry. BlackBerry said, well, we can't give them to you, but we could with an order. And then they got an order. Apple wasn't even notified of this. Apple wasn't a party. The order is is issued. Then they negotiate a protective order. They don't include Apple in those negotiations. And the protective order is very different from the one that was required in these agreements because it does not have the outside counsel only restrictions. And finally, I think, Judge Wilson, you got to the heart of the matter with respect to Xiaomai's position. Xiaomai, I didn't say this expressly because this was this was under seal, but this was a Maliki document. And my friend on the other side went into it, which is in that email. Xiaomai says this is strictly necessary. We need these documents. We need these agreements. So there is leverage here. Xiaomai says it needs these documents. Maliki made no attempt to use that leverage and said, OK, you say you need these documents. Let's negotiate an outside counsel only limitation on them, because these inside lawyers at Xiaomai are not like run of the mill inside lawyers, for instance, in the U.S. Steel case that counsel that counsel invoked. They are managing litigation about patent licensing. They're managing litigation about the price and the fees that will be paid for patent licensing. So the idea that they can manage that and not disclose or act on this information that they have about what Apple paid for these very same patents is is not realistic. And they can't they're not going to be able to kind of compartmentalize in their minds this information. So it's an inherent risk. And so we think that under any standard of review, the harm, the concrete harm to Apple that is established in this record outweighs the speculative burdens that Maliki raises. If these kind of standard issue garden variety outside counsel only restrictions are imposed on these documents. And I'm happy to answer any questions or stop there. I think we have your argument canceled. Thank you. Thank you. That will conclude the argument today. This case will be under submission.